58 N.J. 354 (1971)
277 A.2d 535
CAROL GROTSKY, PLAINTIFF-RESPONDENT,
v.
MARTIN GROTSKY, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued March 22, 1971.
Decided May 24, 1971.
Mr. Herman E. Dultz argued the cause for appellant (Mr. Sam Weiss, of counsel).
*355 Mr. Arthur N. D'Italia argued the cause for respondent (Messrs. Chasan, Leyner, Holland & Tarleton, attorneys; Mr. Robert A. Kaye, on the brief).
The opinion of the court was delivered by JACOBS, J.
The defendant husband appealed from that portion of a divorce judgment in his wife's favor which directed that he "shall keep in force and pay the premiums on all policies of insurance presently in existence on his life and shall irrevocably designate his three infant children as the beneficiaries under the said policies." We certified his appeal while it was awaiting argument in the Appellate Division.
The parties Carol and Martin Grotsky were married in 1949 and have three children. In 1969 Carol filed her complaint in the Chancery Division charging Martin with a matrimonial offense and seeking a divorce along with support for herself and their children. At that time the respective ages of the children were sixteen, fifteen and six. After trial, the Chancery Division determined that Martin had committed the offense as charged and adjudged that the parties be divorced. Custody of the children was awarded to Carol, and Martin was ordered to pay $140 per week representing $35 per week for Carol's support and $35 per week for the support of each of the three children. There were other provisions in the judgment which do not concern us for the appellant's sole attack relates to the provision with respect to Martin's life insurance. The record omits all details with respect to this insurance but the omission is not significant here since the appellant's attack rests entirely on his blanket legal contention that the Chancery Division was wholly devoid of equitable power, either to bind his estate for the support of his minor children, or to direct the dedication of his life insurance to secure such support. Cf. Flicker v. Chenitz, 55 N.J. Super. 273, 284 (App. Div.), certif. granted, 30 N.J. 152, appeal dismissed by consent, 30 N.J. 566 (1959); Raymond v. Raymond, 39 N.J. Super. *356 24, 30 (Ch. Div. 1956); Modell v. Modell, 23 N.J. Super. 60, 62 (App. Div. 1952).
The duty of parents to support their minor children was described by Blackstone as "a principle of natural law." 1 W. Blackstone, Commentraies *447. And although there were common law expressions in our State (Freeman v. Robinson, 38 N.J.L. 383, 384 (Sup. Ct. 1876); Alling v. Alling, 52 N.J. Eq. 92, 96 (Ch. 1893)) that this was a moral but not a legal duty, our current law clearly recognizes that it is both. See Daly v. Daly, 21 N.J. 599, 609 (1956); Greenspan v. Slate, 12 N.J. 426, 435 (1953); cf. Mowery v. Mowery, 38 N.J. Super. 92, 99 (App. Div. 1955), certif. denied, 20 N.J. 307 (1956); Cohen v. Cohen, 6 N.J. Super. 26, 29 (App. Div. 1949). The development of our law has of course been influenced by the various statutory enactments bearing on parental duties. See Mowery v. Mowery, supra, 38 N.J. Super. at 98-99; Kopack v. Polzer, 5 N.J. Super. 114, 115-116 (App. Div. 1949), aff'd, 4 N.J. 327 (1950). The enactment most pertinent here is found in N.J.S.A. 2A:34-23; see also Assembly Bill No. 1100 (1970). It provides in part and in pointedly comprehensive terms that upon judgment of divorce the court may make such order "as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." It also provides that the court may require "reasonable security" for the observance of its order.
In applying N.J.S.A. 2A:34-23 our courts have given sensible recognition to the patent breadth of its terms. Thus, where the circumstances indicated that such was the reasonable and just course, orders have been entered directing not only the ordinary support for minor children but payment of their college expenses as well. See Khalaf v. Khalaf, 58 N.J. 63, 71-72 (1971); Hoover v. Voigtman, 103 N.J. Super. 535 (J. & D.R. Ct. 1968); Nebel v. Nebel, 99 N.J. Super. 256 (Ch. Div.), aff'd, 103 N.J. Super. 216 (App. Div. 1968). In Kruvant v. Kruvant, 100 N.J. Super. 107 *357 (App. Div. 1968), the court expressed the view that in certain special situations the order for support may continue even beyond the minority of the child as, e.g., where on reaching his majority he is disabled from supporting himself. In commenting on N.J.S.A. 2A:34-23 Judge Labrecque said:
It contemplates support for the children of divorced parents who, but for the divorce, would have continued to be entitled to the support of their father. It stems from the presumed inability of such children, by reason of their minority, to provide for themselves. Children who are unable to care for themselves because of their minority are no less entitled to the court's solicitude when they continue to suffer, after they have attained their majority, from a physical or mental disability which continues to render them incapable of self-support. Normal instincts of humanity and plain common sense would seem to dictate that in such cases the statutory obligation of the parent should not automatically terminate at age 21, but should continue until the need no longer exists. 67 C.J.S. Parent and Child § 17, p. 704 (1950); 39 Am. Jur., Parent and Child, § 40, p. 645, § 69, p. 710 (1942). 100 N.J. Super. at 119-120.
The statute does not deal in explicit terms with the power to provide for the continued support of children after the death of their father, nor does any prior holding of this Court dispose of the matter. However, there are pertinent out-of-state decisions under general statutory provisions comparable to our own; they are not uniform but many of them and those most persuasive to us broadly recognize the court's power to assure continued support for minor children after their father's death by provision for the establishment of a trust fund, the maintenance of life insurance, or otherwise. See In re Goulart's Estate, 218 Cal. App.2d 260, 32 Cal. Rptr. 229 (1963); Guggenheimer v. Guggenheimer, 99 N.H. 399, 112 A.2d 61 (1955); Caldwell v. Caldwell, 5 Wis.2d 146, 92 N.W.2d 356 (1958); see also Spencer v. Spencer, 165 Neb. 675, 87 N.W.2d 212 (1957); Morris v. Henry, 193 Va. 631, 70 S.E.2d 417 (1952); 2 Nelson, Divorce and Annulment § 14.91, p. 128 (2d ed. 1961 Rev.); Notes, 35 Va. L. Rev. 482 (1949); 10 Wash. & Lee L. Rev. 226 (1953); Annots., 3 A.L.R.3d 1170 (1965); 18 A.L.R.2d 1126 (1951).
*358 In Guggenheimer v. Guggenheimer, supra, the Supreme Court of New Hampshire held that there was power in a divorce proceeding to order the father to provide a trust fund for the support of his minor children which would be effective after his death and binding on his estate. Chief Justice Kenison noted that while the New Hampshire statute was general in terms and made no specific reference to support orders binding on the husband's estate, decisions in other states had followed the lead of Miller v. Miller, 64 Me. 484 (1874) in sustaining such orders. 212 A. 2d at 63. In Miller the Supreme Judicial Court of Maine, invoking a statutory provision authorizing the court in a divorce proceeding to make such decree "as circumstances require," held that an order for support of minor children was not discharged by the father's death. Justice Walton expressed the thought that if for any reason there was danger that the minor children would be cut off from their father's estate, the court could properly direct that support from the father "shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court." 64 Me. at 487.
Following Miller, the Supreme Court of Appeals of Virginia in Morris v. Henry, supra, 193 Va. 631, 70 S.E.2d 417, held that an order in a divorce proceeding directing the father to support his minor children did not terminate with his death. Justice Buchanan pointed out that there was no sound reason for declining to charge the father's estate with his support obligation (70 S.E.2d at 420); he referred to the father's obligation to maintain his minor children as his solemn duty and, quoting from Murphy v. Moyle, 17 Utah 113, 53 P. 1010 (1898), noted that "`if he fails to do so, every principle of justice demands that they be thus supported out of his estate'" (70 S.E.2d at 421); and he concluded that while the power to bind the father's estate existed, it need not be exercised in all instances but "only when the necessities of the case and the ends of justice require." 70 S.E.2d at 423.
*359 In Franklin Life Insurance Company v. Kitchens, 249 Cal. App.2d 623, 57 Cal. Rptr. 652 (1967), the divorce decree directed the husband to designate his minor children as beneficiaries of his life insurance policies. He died having failed to do so and an action was brought to resolve conflicting claims to the insurance. In rejecting a contention that the insurance direction was beyond the court's power, Justice Fleming placed reliance on a 1951 amendment which expanded the California statute's reference to maintenance to include, as does the New Jersey statute in somewhat comparable fashion, provisions for "support, maintenance and education" of the children, and for "reasonable security" (57 Cal. Rptr. at 657). He noted that in devising practical means for carrying out the expanded obligation, the courts in California and elsewhere had been impelled to the use of new techniques, as in Guggenheimer v. Guggenheimer, supra, 99 N.H. 399, 112 A.2d 61, and that among these new techniques is the "compulsory designation of minor children as beneficiaries of insurance"; with respect to this last item he made the following comments:
The persistent surfacing of provisions in matrimonial decrees designating minor children as beneficiaries of life insurance suggests to us that such provisions serve a useful purpose and satisfy a legitimate need in modern society. Children of divorced parents, often excessively vulnerable to an uncertain future, may need greater protection from the law than children of a united household. On separation or divorce, normally both spouses wish to assure their minor children's future  insofar as it is possible to do so without undue sacrifice of present enjoyments. Insurance provides a relatively painless manner to achieve this objective, particularly when community property insurance on the life of a parent exists. In such circumstances need there be any insurmountable objection to the enforcement of a decree compelling the maintenance of insurance for the benefit of minor children? As a general proposition, we think not. 57 Cal. Rptr. at 657.
The Wisconsin Supreme Court has repeatedly recognized the validity of divorce judgment provisions relating to the father's continuance of his insurance for the benefit of his minor children. In Morris v. Morris, 13 Wis.2d 92, 108 *360 N.W.2d 124 (1961), the judgment directed that the policies be kept in force but omitted any provision for termination. The court did not question the propriety of affording the protection to the minor children but stated that since the father's duty did "not extend beyond the coming of age of the child" the judgment should provide that the father's obligation ended "when the respective beneficiaries reach the age of twenty-one." 108 N.W. 2d at 126. See Trowbridge v. Trowbridge, 16 Wis.2d 176, 114 N.W.2d 129, 133 (1962); Foregger v. Foregger, 40 Wis.2d 632, 162 N.W.2d 553, 561 (1968).
In Riley v. Riley, 131 So.2d 491 (Fla. App. 1961), the District Court of Appeals upheld, as a proper security measure, a provision in a divorce decree directing the husband to maintain his insurance and to designate his minor children as beneficiaries; it did this though the Florida law, unlike the law of Wisconsin and California, did not recognize any general power to enter a support order binding on the father's estate. In the course of his opinion Chief Judge Wigginton discussed the Florida doctrine that a support order for minor children does not survive the father's death and expressed the thought that it was patently unjust and had no "proper place in a modern civilized society." 131 So.2d at 492. See Edelman v. Edelman, 65 Wyo. 271, 199 P.2d 840, 843 (1948); 62 Harv. L. Rev. 1079 (1949).
So far as our own State is concerned there is little to be found which deals specifically with the survival of support orders for minor children or with the court's power to direct the father's maintenance of insurance for their benefit. 11 New Jersey Practice § 995, p. 310 (Herr, Marriage, Divorce and Separation 1963), states that the death of the father during the minority of the child "would seem" to terminate the support order but it cites no pertinent authority under N.J.S.A. 2A:34-23 and its 1971 pocket part, citing In re Goulart's Estate, supra, 218 Cal. App.2d 260, 32 Cal. Rptr. 229, states flatly that "the father's obligation *361 to support his minor child, fixed by the judgment of divorce, does not cease upon the father's death but survives as a charge against his estate." Modell v. Modell, supra, 23 N.J. Super. 60, relied on by the appellant here, dealt with the husband-wife rather than the parent-child relationship. The judgment there directed that the husband's insurance policies be divided between the husband and wife and that the wife be designated as beneficiary of the policies allotted to her. The Appellate Division struck this provision on the ground that it in effect compelled the husband to create a fund for the support of his wife after his death, if she survived, and that this was impermissible under the view that the husband's death automatically terminates his "obligation to support the wife." 23 N.J. Super. at 62.
We need not pursue Modell nor pass on its validity here though its holding might well be reexamined. (cf. 2 Nelson, supra, § 14.63, p. 93; 35 Va. L. Rev., supra at 485, 495) in the light of our recent cases which expressly recognize that the court may allow sufficient alimony to enable the wife "to accumulate reasonable savings to protect herself against the day when alimony payments may cease because of her husband's death or other change in circumstances." Khalaf v. Khalaf, supra, 58 N.J. at 70; Capodanno v. Capodanno, 58 N.J. 113, 120 (1971); cf. Martindell v. Martindell, 21 N.J. 341, 354 (1956); Flicker v. Chenitz, supra, 55 N.J. Super. at 294. For present purposes it is sufficient to hold, as we now do, that the comprehensive terms of N.J.S.A. 2A:34-23 are not to be narrowed but are to be applied liberally to the end that, where the circumstances equitably call for such action, the court may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the minor children as beneficiaries, for the purpose of securing due fulfillment of the support order during their minority. The record before us indicates that Martin is presumably no longer insurable having had at least two heart seizures, and it amply supports the Chancery Division's determination *362 that a provision for maintenance of his insurance was equitably called for by the circumstances.
Since the appellant's only attack before us was on the court's power to prescribe any insurance provision whatever for the benefit of the minor children, it will now be rejected without prejudice, however, to any later application in the Chancery Division for modification resting on any child's attainment of majority and capability of self-support, on financial inability or lessened need to maintain and continue the policies in their entirety, or on any other just cause evidenced by the then prevailing circumstances. N.J.S.A. 2A:34-23. Subject to this, the judgment entered in the Chancery Division is:
Affirmed.
For affirmance  Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN  6.
For reversal  None.